**SHOREHAM VILLAGE, INC.**

v.

**BUSH CONSTRUCTION CO., Inc.**
and
Eugene M. Callis.

Civ. A. No. 20931.

United States District Court
E. D. Pennsylvania.
June 17, 1960.

Walter E. Knecht, Jr., Philadelphia, Pa., for plaintiff.

Frank O. Schilpp, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This action is for alleged damages resulting from the alleged breach by defendant of two contracts with plaintiff (see Exhibits A and B attached to the Complaint). Since the Sales Agency Agreement (Exhibit B) was only to become effective upon full performance by plaintiff of all of its obligations under the Development Agreement (Exhibit A to Complaint),[1] and since this record establishes that plaintiff was responsible for a material failure of performance of its obligations under the Development Agreement, thereby excusing defendant from any obligations it had under that contract, it will not be necessary to consider the Sales Agency Agreement further.

The Development Agreement, which was dated 8/5/54, contemplated the erection of approximately 130 houses on land in Darby Township, Delaware County, Pa., and provided that plaintiff would begin at once, and complete as expeditiously as possible, all engineering of the proposed project, secure all commitments for mortgage insurance, secure all commitments for permanent mortgage financing, secure all commitments for interim financing requirements of the defendant, secure competitive bids from

---

1. Paragraph 1 of the Sales Agency Agreement (Exhibit B to Complaint) provides: "1. This agreement shall be effective only upon the full performance by Shoreham of all of its obligations pursuant to the Development Agreement."

subcontractors, etc. Paragraph 1(d) of this Agreement provides:

"1. Shoreham agrees to begin at once and to complete as expeditiously as possible the following:

\* \* \* \* \* \*

(d) Securing prior commitment from a lending institution approved by Bush of Bush's entire interim financing requirements for the completion of the project on terms satisfactory to Bush; \* \* \*." [2]

Plaintiff was to receive 50% of the net profits made by defendant from the project. Defendant's obligation was to build the houses after the foregoing arrangements had been made by plaintiff.[3] Arrangements were made [4] for the financing of 48 of the 130 houses by a construction loan from the Colonial Surety Company to be available on the basis of certain submitted facts. See Exhibits A and B to affidavit of April 27, 1960 (Document No. 28), and Exhibit A to plaintiff's Affidavit of March 24, 1960 (Document No. 26). The arrangements, however, included a provision submitted by the borrower that $36,111. was to be furnished in cash or work completed. This provision was not satisfactory to defendant unless plaintiff arranged for the cash or work completed. See paragraph 9 of Exhibit 1 to Document No. 24. Since this provision was never ful-

filled,[5] two subsequent proposals were filed with the Colonial Surety Company providing, apparently, that this equity would be retained from payments made by the purchasers of the homes (see Exhibits C and D to affidavit of April 27, 1960, marked Document No. 28), but neither of these proposals were accepted by that company.

Exhibit B to Document No. 28 states the loan "was approved in accordance with the details submitted." The attached letter of May 4 from counsel for plaintiff assumes that the construction loan mentioned in Exhibits A and B to Document No. 28 would be furnished, even though "the details submitted," such as the cash or work completed of $36,111., were not supplied, but this is contrary to the lender's and defendant's affidavits (last sentence of paragraph 5 and paragraph 6 of Exhibit 2 and Exhibit 1 to Document 24), as well as to the above-mentioned Exhibits A and B.

■■ Plaintiff, in its affidavit, alleges that Clinton G. Bush, President of the Bush Construction Company, agreed to advance this $36,111 of equity, thereby modifying the Development Agreement of 8/5/54 (particularly the provision quoted above requiring plaintiff to take all action required to raise the necessary financing). Such an allegation of a pur-

2. The argument in plaintiff's letter of June 9, 1960, which is attached, that defendant contemplated that it "would be required to put up equity capital" in order to secure interim financing is negatived by this and other provisions of the contract (Exhibit A to the Complaint) on which plaintiff relies. Also, it is clear that the meaning of this § 1(d) is a question of law and not a question of fact, as contended at page 2 of the above-mentioned letter of June 9.

3. See paragraph 4 of Development Agreement, which provides:
"4. Provided that (a) Shoreham shall have fully performed all of its obligations pursuant to paragraphs 1 and 2 hereof, and (b) Bush shall have determined that the proposed project is finan-

cially justified in all aspects—including the volume of advanced sales. Bush agrees to select and execute subcontracts to develop the project in compliance therewith."

4. It is not necessary to decide whether defendant is correct in stating that this arrangement was made possible by its taking action to help plaintiff out, since plaintiff had "unsuccessfully \* \* \* sought construction money" (see paragraph 8 ff. of Exhibit 1 to Document No. 24).

5. In paragraph 5 of the Affidavit of the Vice President of the Colonial Surety Company, attached as Exhibit 2 to Document No. 24, it is stated that "at no time were the conditions complied with."

ported oral modification of the Development Agreement is ineffective, even if true, because paragraph 6 of that agreement provided:

"6. This agreement may not be modified or discharged in whole or in part except by an instrument in writing signed by both Shoreham and Bush."

See § 33c, as amended, New York Personal Property Law, McKinney's Consol. Laws, c. 41, and cases cited in the defendant's letter of June 13, which is attached to this Memorandum Opinion. When the Development Agreement (Exhibit A to Complaint) is read with the Construction Loan Agreement (Exhibits A & B to Document No. 28), the burden of supplying the cash of $36,111 or completing the work rests on plaintiff.[6] Cf. New Wrinkle, Inc. v. John L. Armitage & Co., 3 Cir., 1956, 238 F.2d 753, 756–757.

■■■ The plaintiff's Affidavit (Document No. 26) indicates that $390,000 of construction loan money was available in the spring of 1955, but the affidavit of the lending company's Vice President that "at no times were the conditions complied with" (see footnote 5 above) is not challenged by any direct assertions of plaintiff's affidavit (Document No. 26). Plaintiff's affidavit apparently takes the position that the written requirement that $36,111 be supplied in cash or work completed was modified with the approval of Colonial Surety Company (the affidavit does not specifically state this) and Mr. Bush. However, there is no showing in the record (a) that defendant (as opposed to its President, and plaintiff does not allege that he was acting with authority or on behalf of defendant—see paragraph 8 of Document No. 26) agreed to such modification since Exhibit A to the plaintiff's affidavit (Document No. 26) does not state who is to supply the $424,611 to be paid for the construction of 48 houses, except that $390,000 of this sum is to be borrowed on a construction loan, or (b) that the lender agreed to such modification. Where a disinterested third person, such as this lending institution, specifically states the conditions of its agreement and a party's (plaintiff's) failure to comply with them, the general conclusions as to them of plaintiff's affidavit (Document No. 26) seems hardly sufficient to negative such specific statements. However, the United States Court of Appeals for the Third Circuit has repeatedly held that the record on a motion such as this is to be considered in order to determine whether issues of fact exist and not to decide such issues. See Krieger v. Ownership Corporation, 3 Cir., 1959, 270 F.2d 265, 270; Bragen v. Hudson County News Company, Inc., 3 Cir., 278 F.2d 615. Out of an abundance of caution, plaintiff will be granted thirty days from this date within which to file a Supplemental Pre-Trial Memorandum, stating specifically its contentions, giving dates and persons involved, as to the oral modification of the following provision of Exhibit A to Document No. 28 (Affidavit of April 27, 1960):

"Cash by owner;
or work completed   $36,111.00"

If such Supplemental Pre-Trial Memorandum is filed, a preliminary trial may be required on the limited issue of the modification of this provision in the contract formed by Exhibits A and B to Document No. 28.[7]

---

**6.** The fact that defendant agreed with the Surety Company (Exhibit A to Document No. 26) to build the 48 houses for the amount of the construction loan plus $34,111 (the record does not disclose why this amount was not that of the loan plus $36,111 as mentioned in Exhibits A and B to Document No. 28) does not mean that they promised to advance this $34,111 or that they did not look to plaintiff to furnish this sum, as well as the additional $2000 mentioned in the financing agreement of April 19, 1955 (Exhibits A and B of Document No. 28), as part of its obligation to arrange the financing.

**7.** If, after this preliminary trial, the jury finds this contract was modified as contended by plaintiff, the trial on all the

■ The vague allegations of paragraph 20 of plaintiff's affidavit (Document No. 26) that $65,621 of equity was "to be furnished over a period of time" cannot negative the definite statement in the affidavit of the Vice President of the Provident Tradesmen's National Bank and Trust Company (Exhibit 3 to Document No. 24) that this amount was to be raised, and all other conditions of the construction financing were to be met, in sixty days from December 1, 1955, and that none of such conditions were met. See, also, affidavit of April 28, 1960 (Document No. 29). See New Wrinkle, Inc. v. John L. Armitage & Co., supra; United States for use of Kolton Elec. Mfg. Co. v. Halpern, 3 Cir., 1958, 260 F.2d 590. In the New Wrinkle case, the court said at page 757 of 238 F.2d:

"* * * since no ambiguity between the provisions of these respective paragraphs is discoverable, the motion for summary judgment rested squarely upon the obvious absence of any genuine issue of fact and called upon the learned trial Court not to construe the meaning of the unambiguous language upon which the justiciable controversy pleaded in the complaint arose, but to decide that controversy upon the provisions of the contract sued upon without the necessity or propriety of considering any extraneous matter, whether issuable or not."

Also, it is noted that there is no evidence in the record that the plaintiff furnished any financing for the remaining appoximately 80 houses contemplated by the Development Agreement.

The parties, or either of them, may submit an order based on the findings summarized in this opinion in accordance with F.R.Civ.P. 56(d) if the above-mentioned Supplemental Pre-Trial Memorandum is filed. The determination and direction provided for in F.R.Civ.P. 54 (b) may be included in the order filed in accordance with this Memorandum Opinion,[8] unless the Supplemental Pre-Trial Memorandum is filed by plaintiff as specified above (no later than July 17) in a form making this unnecessary.

---

other issues raised by the pre-trial memoranda can proceed before the same jury. Cf. F.R.Civ.P. 42, 28 U.S.C.

8. Defendant's letter of May 5, 1960, is also attached. The briefs of counsel have been filed in the Clerk's file.