**Gordon D. JACKSON, Plaintiff-Appellant,**

**v.**

**E. C. ALEXANDER and Exchange National Bank of Colorado Springs, a National Banking corporation, as Trustee, Defendants-Appellees.**

**No. 71-1621.**

United States Court of Appeals,
Tenth Circuit.

Sept. 11, 1972.

J. Gregory Walta, Colorado Springs, Colo., for plaintiff-appellant.

Charles E. Painter and J. Hartley Murray, Colorado Springs, Colo. (Spurgeon, Aman & Hanes, and Murray, Baker & Wendelken, Colorado Springs, Colo, on the brief) for defendants-appellees.

Before PHILLIPS, SETH and McWILLIAMS, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

Jackson brought this action against Alexander and the Exchange National Bank of Colorado Springs,[1] a National Banking Corporation, as trustee, to recover for alleged fraud $6,375 as compensatory damages and $10,000 as punitive damages.

The Bank and Alexander filed a motion to dismiss on the grounds that the complaint did not state a claim on which relief could be granted, and did not state the circumstances constituting the alleged fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure.

The court held that the complaint did not state a claim on which relief could be granted, sustained the motion to dismiss, and entered judgment dismissing the action and awarding to Alexander and the Bank their costs.

Jackson has appealed.

■ We must liberally construe and accept as true the allegations of fact in the complaint and the inferences reasonably deductible therefrom, but we need not accept as true mere legal conclusions nor allegations of fact that are at variance with the express terms of an instrument attached to the complaint as an exhibit and made a part thereof.[2]

■ Moreover, in all averments of fraud, the circumstances constituting the fraud must be stated with particularity.[3]

This case had its genesis in an option to purchase the El Paso Gold Mine, located in Teller County, Colorado, and particularly described in an option agreement, a copy of which is marked "Exhibit A" and attached to the complaint, and is twice referred to in the complaint as "Exhibit A." The option agreement was entered into on August 1, 1967, between the Bank, as optionor, and Jackson, as optionee. They were referred to in the option as "seller" and "purchaser," respectively.

The pertinent provisions of the option were as follows:

It provided that in consideration of $5,000 paid by the purchaser to the seller, the latter granted to the purchaser "the exclusive right and power, at its (his) option" for and during the period commencing August 1, 1967, up to and including November 1, 1967, "to purchase" the El Paso Gold Mine, located in Teller County, Colorado, particularly described in the option agreement, together with all the mining equipment and machinery owned by the seller and used in the mining operations conducted on the property, also particularly described in the option agreement.

It further provided that in the event the purchaser exercised the option, he should pay as the purchase price $150,000, payable as follows: $5,000 to be paid at the time the option was exe-

---

1. Hereinafter referred to as the Bank.
2. See Olpin v. Ideal National Insurance Company, 10 Cir., 419 F.2d 1250, 1255.

3. Fed.Rules Civ.Proc. rule 9(b), 28 U.S. C.A.; Duane v. Altenburg, 7 Cir., 297 F.2d 515, 518.

cuted, and "in the event of exercise of the Option, to be applied as earnest money on the purchase price; $25,000.00 to be paid at closing; and the balance of $120,000.00 to be payable by the execution of a Promissory Note secured by a First Deed of Trust and Chattel Mortgage on the property" described in the option and payable in installments as stipulated in the option.

It further provided:

"It is mutually agreed that, in the event PURCHASER shall fail to elect to exercise this option, the $5,000.00, which has been heretofore paid by PURCHASER shall be retained as liquidated damages by the SELLER, and that thereafter each party will be relieved of all further obligation hereto, * * *."

Paragraph 10 of the option reads:

"10. In the event PURCHASER elects to exercise this Option, it shall give notice by registered mail, postage prepaid, addressed to E. C. Alexander, Realtor, Woodland Park, Colorado, of its intent so to do. Said Notice shall be postmarked no later than November 1, 1967. PURCHASER shall have the further right, in the alternative, to give personal written notice to the said E. C. Alexander, and to secure a written receipt therefor, said Notice to be given on or before November 1, 1967. *In the event of exercise of the Option by PURCHASER, closing of said transaction shall be on or before December 1, 1967. In the event of exercise of this Option, SELLER shall furnish to PURCHASER a complete Abstract of Title to all of the real property covered by this Contract on or before November 10, 1967. PURCHASER shall have a period of fifteen (15) days from the receipt of said Abstracts to examine the same, and, in the event, title is not merchantable and written notice of defects is given to SELLER within fifteen (15) days after the receipt of said Abstracts and shall not be capable of being rendered merchantable by SELLER within 120 days after such*

*written notice, then this Contract shall be void and of no effect and each party hereto shall be released from all obligations hereunder and the earnest deposit of $5,000.00 shall be refunded to PURCHASER.*" (Italics ours.)

It will be observed that paragraph 10 makes it perfectly clear that the parties to the option contemplated that there might be defects in the Bank's title, which it could not remedy so as to make the title merchantable within 120 days after receipt of the written notice from Jackson of such defects, and that they expressly agreed that in such event the option would be "void and of no effect" and that each party should be "released from all obligations hereunder" and the earnest money deposit of $5,000 should be refunded to the purchaser.

█ It should be kept in mind that the $5,000 was originally paid as consideration for the option and was to be applied as earnest money on the purchase price, only in the event of the exercise of the option by Jackson; and since the option was never exercised, the $5,000 never became earnest money, and Jackson never became entitled to recover it back.

After alleging diversity jurisdiction in his complaint, Jackson further alleged:

"II.

"On January 26, 1966, the Bank, acting as trustee for an undisclosed principal, foreclosed on the El Paso Gold Mine in the Cripple Creek Mining District, Teller County, Colorado. (See Exhibit A for a legal description of the property.)

"III.

"On July 26, 1966, the redemption period passed under C.R.S.1963, 118–9–2(2) (1965 Perm.Supp.) and the Bank became eligible to receive a public trustee's deed.

"IV.

"On April 26, 1967, the period for issuance of a public trustee's deed expired under C.R.S.1963, 118–9–11(1),

without such a deed having been issued to the Bank."

While it is not expressly alleged in the complaint, the implication necessarily follows from the above allegations that the Bank, as trustee, held a deed of trust on the property covered by the option to secure the indebtedness of a third party to the Bank, as trustee; that the maker of such deed of trust defaulted, and that the Bank brought foreclosure proceedings, secured a decree of foreclosure which adjudged that the property covered by the deed of trust should be sold to satisfy the indebtedness secured thereby; that a sale was held, and that the Bank, as trustee, was the successful bidder at such sale and received a certificate of purchase.

Jackson, in his complaint, further alleged:

"V.

"On August 1, 1967, plaintiff paid the Bank, as trustee, the sum of $5,000.00 in earnest money for a three-month option to purchase the El Paso Gold Mine. (See Exhibit A.) * * *."

The $5,000 was paid as consideration for the option, and by the express terms of the option agreement, it was not to become earnest money unless the option was exercised by Jackson. He never exercised the option. His counsel so admitted in his brief, filed in the trial court in opposition to the motion to dismiss, in which he stated, "It is true that Plaintiff did not exercise his option."

Jackson further alleged:

"VII.

"Orally and in writing, the Bank and its agent, E. C. Alexander, expressly and impliedly represented to the Plaintiff that the Bank, as trustee, held clear and marketable title to the El Paso Gold Mine."

In his complaint, Jackson alleged that under C.R.S.1963, 118–9–11(1), the period for issuance of the public trustee's deed ceased on April 26, 1967, and no such deed had been issued to the Bank.

Jackson further alleged:

"VIII.

"The option agreement of August 1, 1967 is void because neither the Bank nor its beneficiaries held title to the subject property and the Bank could not have performed under the option agreement with the Plaintiff.

"IX.

"On November 1, 1967, the Bank forfeited Plaintiff's $5,000.00 in earnest money, and since that time the Defendants have knowingly and fraudulently concealed from the Plaintiff the Bank's lack of title to the El Paso Gold Mine.

"X.

"Plaintiff reasonably relied on the Defendant's honesty and good faith, and as a result did not learn of Defendant's deception until May of 1970.

"XI.

"Since May of 1970, the Plaintiff has repeatedly demanded that the Bank return his earnest money, but the Bank has refused without cause."

C.R.S.1963, 118–9–11(1), reads as follows:

"118–9–11. *Rights terminate if deed not applied for within nine months—continuance of lien*—(1) If the person entitled to a deed shall not apply for such deed within nine months after the expiration of the last period of redemption, or if no such deed shall be issued to him within such period, all rights under the certificate of purchase, including any rights of any lienor who has redeemed therefrom, shall terminate, and no person shall be entitled to receive such deed, and the trustee, sheriff, or other official who made the sale shall not have the power to issue or execute such deed."

In his complaint, Jackson fails to allege or to make any reference to the second paragraph of § 118–9–11, which reads:

"(2) After such nine months, the holder of the certificate of purchase, if no redemption has been made, or the lienor last redeeming, shall have a lien upon the property sold superior and prior to all liens and encumbrances recorded or filed subsequent to the recording and filing of the lien on which such sale was based, for the amount which would have been necessary to redeem such property on the last day of the last period of redemption, plus interest thereon at the legal rate, and also all taxes, insurance premiums and other lawful and proper charges advanced or paid by such person."

It will be observed that Jackson alleged in his complaint that the option agreement was void, because the Bank, as trustee, never held title to the "subject property" and could not have performed under the option agreement. He does not allege the ultimate facts on which that conclusion is based. By reason of his allegations in Counts III and IV of the complaint, quoted above, he obviously predicates it on the assumption that the Bank, while acting in a fiduciary capacity for a beneficiary whose name is not disclosed in the record, after having obtained in proceedings for the foreclosure of the deed of trust a decree directing the sale of the property described therein to satisfy the indebtedness secured thereby, and after the foreclosure sale had been held at which the Bank was the successful bidder and obtained a certificate of purchase entitling it to a public trustee's deed at the end of the redemption period, which was July 26, 1966, idly stood by until after April 26, 1967, without requesting a deed from the public trustee, and thereby lost all of its right to secure a trustee's deed for property of substantial value. Such value is shown by the fact that on August 1, 1967, a prospective purchaser paid $5,000 for a three-month option to purchase such property for $150,000. To assume that the Bank did so without some arrangement with the debtor that would have been as advantageous to the Bank, as trustee, as a deed from the public trustee would have been, is almost inconceivable, and in effect would charge the Bank with gross and inexcusable negligence by so failing to protect the interests of its beneficiary with respect to the valuable property.

On the other hand, it is a reasonable assumption that the Bank, as trustee, on or after July 26, 1966, entered into an agreement with the debtor, which was as advantageous to it as trustee for the debtor, as a deed from the public trustee to the Bank would have been. For example, the Bank could have entered into an agreement with the debtor, whereby he was given an extension for a stipulated period that would end not later than July 26, 1967, within which to pay the indebtedness secured by the deed of trust, in consideration of the debtor paying all accrued interest then due and which would accrue and become due during the extension period, as well as taxes assessed and insurance premiums then due or to become due during the extension period, and all costs incurred by the Bank in the foreclosure proceeding, including attorney's fees, and the execution and acknowledgment by the debtor of a deed running to the Bank, as trustee, and conveying to it all of the property covered by the deed of trust; and the depositing of such deed in escrow, under an agreement that the escrow agent would deliver such deed to the Bank if the debtor failed to pay before the expiration of the extension period the indebtedness secured by the deed of trust, and all taxes assessed against the property and amounts paid on insurance premiums.

Of course, we will be accused of speculating. We have, but our speculations are in accord with reason and probabilities, where Jackson is speculating on the assumption of a failure by the Bank to protect the interests of its beneficiary

and the presumption and the probabilities are that it would not so fail.

Counsel for Jackson in his brief asserts that the Bank had a legal duty to disclose its lack of title in the property covered by the option. Jackson obtained an option to purchase this property, which provided that if exercised then, and only then, the defendants would have an abstract of title certified to date and delivered to the plaintiff's attorney, and if at that time plaintiff's attorney had determined that a title defect existed, defendant would then have a period of 120 days to correct the alleged defect, and if the defect discovered by the plaintiff's attorney could not be corrected, then and only then would plaintiff have been entitled to a return of his option money payment. So, Jackson's rights are predicated on an exercise of the option which never occurred, and his decision not to exercise the option was not because of any defects in the title of the Bank.

We conclude that the decision of the trial court was correct and it is accordingly affirmed.