**Gracie ROBINSON et al., Plaintiffs,**

v.

**UNITED MINE WORKERS OF AMERICA HEALTH AND RETIREMENT FUNDS et al., Defendants.**

Civ. A. No. 77–0698.

United States District Court, District of Columbia.

July 29, 1977.

Steven J. Millemann, Larry F. Sword, Prestonburg, Ky., Wayne M. Moore, Washington, D. C., for plaintiffs.

Henry S. Ruth, Jr., Norman P. Goldberg, Washington, D. C., for defendants.

### MEMORANDUM AND ORDER

GESELL, District Judge.

In this yet-uncertified class action surviving spouses and dependents of deceased coal miners primarily seek an order declaring their right to permanent health care coverage by the defendant United Mine Workers of America Health and Retirement Funds (the "Funds"). Damages are also sought. Plaintiffs advance several grounds in support of their claim, only one of which—namely whether defendants' actions constitute a violation of the federal securities laws—is encompassed in defendants' motion for partial summary judgment. Finding no dispute as to the material facts, the Court grants defendants' motion.

The United Mine Workers of America Health and Retirement Funds are four irrevocable trusts created pursuant to § 302(c) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186 (1970 & Supp. V 1975), to provide health and retirement benefits to active and retired miners, their families, dependents, and survivors.

One of these trusts—the only one involved in this litigation—is the United Mine Workers of America 1950 Benefit Plan and Trust (the "Trust"). All of the trusts are administered by three trustees, also defendants here, who establish eligibility standards and benefit levels. One trustee is appointed by the union, another by the contributing or "signatory" coal operators; the third, neutral trustee is chosen by the other two. The trusts are funded by fixed, per-tonnage royalties paid by the signatory operators. From the miners' perspective, the Funds are "involuntary" and "noncontributory": payments are made only by the coal operators, and miners have no option to choose higher or lower wages in lieu of lower or higher payments.

Upon the deaths of their coal-miner husbands, each of the named plaintiffs received from the Trust a death benefit in the amount of $5,000 and health care coverage for a period of five years. Plaintiffs allege that the union, which is portrayed as the alter ego or agent of the Funds, represented to them and to their husbands that lifetime health care coverage would be provided. Therefore, plaintiffs claim entitlement to such coverage and to damages from the defendants under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1970); § 10(b) of the Securities Exchange Act of 1934, id. § 78j(b); and SEC Rule 10b–5, 17 C.F.R. § 240.10(b)–5 (1976).

Although defendants advance several arguments in support of their motion to dismiss the securities acts claims, the Court finds it unnecessary to go beyond the broad contention that an interest in the 1950 Fund is not a "security" as defined in the securities acts.

Section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10) (1970), defines security, in relevant part, as

any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract,* voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security." (Emphasis added).

The definition under the Securities Act of 1933 is virtually identical. *Id.* § 77b(1). Of this list, the only term that could arguably characterize an interest in the 1950 Fund is "investment contract," defined by the Supreme Court as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W. J. Howey,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946). Plaintiffs' brief, and a recent District Court opinion, *Daniel v. International Brotherhood of Teamsters,* 410 F.Supp. 541 (N.D.Ill.1976), demonstrate the variety of arguments that can be used to stretch the terms of this definition enough to encompass the interest in question. But such a reading, in the Court's opinion, requires a degree of creativity unwarranted by the realities of the transactions and the function and purpose of the securities laws.[1]

Support for this reluctance to expand the scope of the term "investment contract" comes from *United Housing Foundation v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), in which the Court held that shares in a cooperative apartment development are not investment contracts and thus their issuance is not governed by the securities laws. Probing the economic substance of the interest, the Court noted the inalienability of the shares, the lack of any real risk confronting the invested capital, and the fact that the shareowners were deriving immediate benefits through use of

---

1. Only two other cases have considered whether an interest in a noncontributory pension or health benefits plan is a security. Both have concluded that it is not. *Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Industry,* 424 F.Supp. 80 (C.D.Cal.1976); *Wiens v. International Bhd. of Teamsters,* C.A. No. 76–2517 IH (C.D.Cal. Mar. 28, 1977). *Daniel* is distinguishable from the instant case; these differences notwithstanding, the Court disagrees with the reasoning of that opinion.

the apartments, rather than merely possessing an expectancy of benefits. Any surplus accumulated by the cooperative was distributed as a rebate to shareowners, not invested for profit. These indicia suggested to the Court that "the purchasers were interested in acquiring housing rather than making an investment for profit." *Id.* at 860, 95 S.Ct. at 2064. The prospect of deriving any "profits" from the investment was simply too speculative and insubstantial to warrant application of the securities laws. Quoting *Howey,* the Court concluded:

> Well-settled principles enunciated by this Court establish that the shares purchased by respondents do not represent any of the "countless and variable schemes devised by those who seek the use of money of others on the promise of profits," . . . and therefore do not fall within "the ordinary concept of a security." *Id.* at 848, 95 S.Ct. at 2058.

A similar conclusion is required here. The miners cannot be said to have "invest[ed] . . . money" within the meaning of *Howey,*[2] for all contributions are made by the operators on a per-tonnage basis, and miners have no power to increase or decrease payments or to convert them to personal use. Since benefits have traditionally been paid mainly out of current contributions from the operators, the Trust capital is subject to very little risk. In addition, Trust participation involves no "expectation of profit" in the sense found necessary in *Howey* and *Forman.* As in *Forman,* interests in the Trust are inalienable, and any surplus will be converted into extended benefits for all rather than invested for the individual miner's profit. The miners, in bargaining for establishment of the Trust, were obviously interested in creating a sound, comprehensive health plan "rather than making an investment for profit."

The Trust simply cannot be characterized as one of the "countless and variable schemes devised by those who seek the use of money of others on the promise of profits."

The securities laws in question, designed to safeguard the integrity of investment decisions, have been in operation for over forty years. Yet until the 1975 decision in *Daniel* (which predated *Forman*) no court had ever held, nor apparently had anyone including the SEC the temerity to argue that an interest in an involuntary, noncontributory pension or health benefit plan was covered by the securities laws.[3] Congress has repeatedly indicated its belief to the contrary. *See, e. g.,* S.Rep. No. 93–127, 93d Cong., 1st Sess. 3 (1975); S.Rep. No. 92–1150, 92d Cong., 2d Sess. 4 (1972); S.Rep. No. 734, 84th Cong., 2d Sess. 60 (1956). *Forman* is but one of a series of recent Supreme Court decisions indicating a pronounced disfavor with attempts to stretch the securities laws beyond their traditional scope. *E. g., Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (S.Ct. Mar. 23, 1977); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). This case does not merit departure from the traditional learning. Plaintiffs' participation in the Trust involves nothing akin to the investment decisions the securities laws were enacted to protect. There are other statutes cited in the complaint that are designed to protect any of plaintiffs' rights that may have been infringed. Defendants' motion for partial summary judgment is granted.

SO ORDERED.

---

2. Certainly plaintiffs in this case, miners' spouses, cannot be said to have "invested" any "money" in the Fund. *Cf. Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

3. Until *Daniel* the SEC consistently maintained the view that noncontributory pension plans were not covered by the federal securities laws. *Daniel v. International Bhd. of Teamsters,* 410

F.Supp. at 547. Having suddenly shifted its position in an *amicus* brief in that case, the SEC is no longer entitled on this issue to be accorded the special deference normally granted to an administrative agency interpreting its governing statute. *United Housing Foundation, Inc. v. Forman,* 421 U.S. at 858 n. 25, 95 S.Ct. 2051.