Theodore SCHLANSKY on behalf of himself and all others similarly situated, Plaintiff,

v.

UNITED MERCHANTS AND MANU-FACTURERS, INC., Defendant.

No. 76 Civ. 5799 (HFW).

United States District Court,
S. D. New York.

Nov. 7, 1977.

Eugene Mittelman, New York City, for plaintiff; Eugene Mittelman, Michael S. Gordon, New York City, of counsel.

Stroock, Stroock & Lavan, New York City, for defendant; Gary J. Greenberg, Jay R. Fialkoff, New York City, of counsel.

## MEMORANDUM DECISION

WERKER, District Judge.

This action was commenced by Theodore Schlansky on his own behalf and as a class action [1] against his former employer United Merchants and Manufacturers, Inc. to recover pension benefits allegedly due him under both his employment contract and defendant's pension plan.

Jurisdiction is alleged by virtue of diversity of citizenship under 28 U.S.C. § 1332 as to Counts I and II of the complaint; by virtue of section 22(a) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §§ 77a–77aa, and section 27 of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §§ 78a–78jj as to Count III. As to Counts IV and V, jurisdiction is predicated under section 502 of the Employer Retirement Income Security Act of 1974, 29 U.S.C. § 1132.

Defendant has moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the first five counts of plaintiff's complaint for failure to state a claim upon which relief may be granted.

## COUNT I

Plaintiff Schlansky alleges a breach of contract of employment in Count I. Plaintiff states that he was employed by Arnel-Plastron, Inc. ("Arnel") from 1946 until 1960 when defendant United Merchants and Manufacturers, Inc. ("United") acquired Arnel. From the date of acquisition of Arnel plaintiff was employed by defendant United in various sales and managerial positions until August 31, 1975 at which time he was discharged as a result of the merger of one of defendant's divisions into another. At the date of his discharge, plaintiff was fifty years old and had been employed continuously by defendant United and its predecessor Arnel for a total of twenty nine years, fourteen of which represented employment by Arnel and fifteen of which represented employment by defendant.

Plaintiff further alleges that defendant's non-contributory employee pension plan has been in operation from 1942 to date and that plaintiff became a participant in such plan upon commencing employment with defendant. Additionally, plaintiff contends that the accrual of benefits under the pension plan was a "material part of the consideration which induced plaintiff to agree to render services to defendant and to remain in its employ between 1961 and August 31, 1975" (Complaint ¶ 16). Plaintiff also states that between these dates defendant "made oral and written promises, state-

---

1. Counts I, II and V are brought by plaintiff on his own behalf. Counts III and IV are brought by plaintiff on behalf of himself and also as a class action.

ments, actions and representations to plaintiff . . . that for purposes of determining plaintiff's eligibility for pension benefits . . . plaintiff's service for Arnel . . . would be considered as service with the defendant" (*Id.* ¶ 18), that he relied upon such statements, actions and representations and that therefore he is entitled to pension benefits based upon his years of service with both Arnel and defendant United.

Defendant United, upon plaintiff's discharge, informed plaintiff that he was required to forfeit his pension plan benefits for failure to meet age and service requirements incorporated in the pension plan. Because of this forfeiture plaintiff seeks damages for breach of contract.

The motion to dismiss for failure to state a claim as to Count I is granted in part and denied in part.

Plaintiff Schlansky was terminated prior to his Normal Retirement Date as defined in Article II of the Pension Plan and therefore his rights are governed by Article VII of the Plan. Article VII provides as follows:

. . . . .

2. If the date of termination of employment of a Participating Employee shall be prior to his Normal Retirement Date but

(i) after his 50th birthday and if the period of his *continuous employment* is at such date of termination 25 years or more; or

(ii) after his 55th birthday and if the period of his *continuous employment* is at such date of termination 15 years or more, such Employee shall be entitled to a Retirement Pension commencing at his Normal Retirement Date, . . (emphasis supplied).

Plaintiff contends that the words "continuous employment" in his situation, encompass his years of employment with his former employer Arnel and that there-

fore he has accumulated the required twenty-five years of employment to collect his pension as a Participating Employee discharged after his fiftieth birthday. However, when section fourteen of Article II is read in conjunction with Article VII it is clear that plaintiff has no cause of action for breach of contract based on the express language of the pension plan. Section fourteen of Article II states that for computation of credited service years the period of employment by any other employer other than the Corporation [2] shall be included only to the extent that during such period more than 50% of the stock of that employer was owned by the Corporation. Defendant never owned 50% of Arnel's stock, and Arnel never joined the pension plan in question, and thus could not at any time be considered a participating Corporation in the plan. Therefore plaintiff's years of service with Arnel cannot be deemed years of "continuous employment" with defendant United and for purposes of "continuous employment" plaintiff's service must be computed from 1961 when United acquired Arnel. Plaintiff therefore has failed to state a claim for breach of contract based upon the express language of the pension plan.

Plaintiff further alleges oral and written representations by defendant that his years with Arnel would be credited toward his eligibility determination for pension benefits. Any oral agreement to credit plaintiff upon retirement with his years of service with Arnel is violative of the New York Statute of Frauds since such agreement is not one to be performed within one year from its making. N.Y.Gen.Oblig.Law § 5–701 (McKinney 1964); *see also Lee v. Jenkins Bros.*, 268 F.2d 357, 372–73 (2d Cir.), *cert. denied*, 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed.2d 183 (1959). Furthermore, between the years 1963 and 1975, plaintiff was employed by defendant pursuant to contracts containing merger clauses whereby the parties agreed that such contracts could not be modified except by an instru-

**2.** "Corporation" is defined in Article II as any corporation that has become a party to the pension plan.

ment in writing. Therefore, any purported oral modifications are wholly ineffective. N.Y.Gen.Oblig.Law § 15–301 (McKinney 1964); *Shoreham Village, Inc. v. Bush Construction Co.,* 185 F.Supp. 534, 536–37 (E.D. Pa.1960). For these reasons plaintiff has failed to state a claim for breach of contract based upon oral representations.

■ It is also contended in Count I, paragraph 18, that *written* promises, statements and representations were made to the effect that plaintiff's service with Arnel would be considered in determining his eligibility for pension benefits. To the extent that plaintiff can actually prove such representations in writing and signed by the defendant United he has stated a claim upon which relief may be granted. In particular, any documents that can be produced surrounding the 1961 acquisition of Arnel by United which possibly contain pension carry-over provisions for Arnel employees continuing employment with United will also be considered under the allegations of Count I.

## COUNT II

Count II alleges various willful and negligent misrepresentations concerning material facts related to defendant's pension plan. These misrepresentations and omissions contained in paragraph 22 pertain to factors such as age and service requirements; statements that continuous employment by an employee with a predecessor prior to employment by United would be considered as service with United for purposes of determining pension eligibility and fringe benefits; and misrepresentations as to the value and security of plaintiff's pension rights. Plaintiff also alleges misleading statements that defendant's plan was established for the exclusive benefit of employees when arbitrary and unreasonable age and service requirements were imposed; omissions as to the plan's actuarial basis; omissions to state that due to arbitrary and unreasonable age and service requirements most plan participants would be subjected to forfeiture of benefits (Complaint ¶ 22).

By reason of the above-alleged misrepresentations and omissions plaintiff seeks damages under Count II for breaches of common law and fiduciary duties.

■ As to the allegations of willful misrepresentations and omissions by defendant, plaintiff has failed to state a claim upon which relief may be granted. Rule 9(b) Fed.R.Civ.P. requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." *See Jackson v. Alexander,* 465 F.2d 1389, 1390 (10th Cir. 1972); *Mooney v. Vitolo,* 435 F.2d 838, 839 (2d Cir. 1970). Plaintiff has merely made general allegations of misrepresentations and omissions without revealing the time and place of such misrepresentations or by whom they were made. This is insufficient. *See* 5 C. Wright & A. Miller, Federal Practice & Procedure § 1297 (1969). As was stated in *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1279 (N.D.Ill.1976), "a plaintiff alleging fraud must specify the time, place and contents of any alleged false representations, and the full nature of the transaction." Therefore, that part of Count II alleging willful misrepresentations and omissions is dismissed.

■ As to the allegations of negligent misrepresentations and omissions, this court is well aware that under New York state common law, an employer's obligations under a pension plan are limited to that plan's terms and are solely contractual in nature. *See Schneider v. McKesson & Robbins, Inc.,* 254 F.2d 827, 829–30 (2d Cir. 1958); *Gitelson v. DuPont,* 17 N.Y.2d 46, 49, 268 N.Y. S.2d 11, 13, 215 N.E.2d 336, 337 (1966); *Stanley v. Caltex Petroleum Corp.,* 63 Misc.2d 780, 782–83, 313 N.Y.S.2d 836, 838 (Sup.Ct. Queens County 1970); *Bailey v. Rockwell Spring and Axle Co.,* 13 Misc.2d 29, 33, 175 N.Y.S.2d 104, 108 (Sup.Ct.N.Y. County 1958). However, it is elementary tort law that where no duty exists, a "voluntary assumption of a duty by affirmative conduct" may arise. *See* W. Prosser, Handbook of the Law of Torts, § 56 at 338–48 (4th ed. 1971). In the case at hand, although defendant would not have been neg-

ligent in remaining silent as to the terms of the pension plan, once a voluntary representation based on the plan's terms was uttered, a duty of care arose as to the accuracy and truth of those representations along with a concomitant obligation to avoid negligent omissions following thereafter. *See Gediman v. Anheuser Busch, Inc.,* 299 F.2d 537, 546 (2d Cir. 1962). For these reasons, the motion to dismiss Count II for failure to state a claim based upon negligent misrepresentations and omissions is denied.

## COUNT III

Count III of plaintiff's complaint alleges a class action for damages resulting from violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated thereunder. The alleged misrepresentations and omissions are those embodied in paragraph 22 of the complaint, outlined above under "Count II" of this opinion.

The issues involved in Count III are as follows: first, whether the anti-fraud provisions of the Securities Acts are applicable to an involuntary, non-contributory pension plan; and second, whether plaintiff has stated a claim upon which relief may be granted.

■ At the outset, I need not address plaintiff's section 17(a) claim since there is no private right of action available in this circuit under that section of the 1933 Act. *Architectural League New York v. Bartos,* 404 F.Supp. 304, 313 (S.D.N.Y.1975); *Welch Foods, Inc. v. Goldman Sachs & Co.,* 398 F.Supp. 1393, 1399–1401 (S.D.N.Y.1974). Accordingly that part of Count III alleging a section 17(a) violation is dismissed for failure to state a claim.

3. *See contra, Robinson v. United Mine Workers of America Health and Retirement Funds,* 435 F.Supp. 245 (D.D.C.1977); *Weins v. Int'l. Brotherhood of Teamsters,* [current binder] CCH Fed.Sec.L.Rep. ¶ 96,005 (C.D.Cal.1977); *Hurn v. Retirement Fund Trust,* 424 F.Supp. 80 (C.D.Cal.1976).

4. Section 3(a)(10) states

■ As to the section 10(b) and Rule 10b–5 claim, I hold that plaintiff's interest in defendant's non-contributory, involuntary pension plan is a security which is subject to the anti-fraud provisions of the 1934 Act. Plaintiff however, for reasons stated below has failed to state a claim upon which relief may be granted and Count III is dismissed.

In holding that plaintiff's interest in the pension plan is a security, this court adheres to the rationale applied in *Daniel v. International Brotherhood of Teamsters,* 561 F.2d 1223 (7th Cir. Aug. 20, 1977), *aff'ing* 410 F.Supp. 541 (N.D.Ill.1976).[3]

In *Daniel* the plaintiff was a member of the Teamsters union and had worked for unionized employers for more than twenty-two years with an involuntary four month break in service between 1960 and 1961. Due to this interruption in service the union determined that plaintiff's pension rights had been forfeited under the pension plan's vesting requirements. *Daniel,* 561 F.2d at 1226–1227. Plaintiff Daniel commenced a suit charging misrepresentations and omissions of material facts related to the length and continuity requirements of the plan's vesting provisions, the value of plaintiff's interest in the plan, and the failure to reveal that the pension fund's actuarial basis was arbitrary. (These allegations are almost identical to plaintiff's claims in the instant case.) The Seventh Circuit held that Daniel's interest was a security acquired in a sale and subject to the antifraud provisions of both the 1933 and 1934 Acts.

The court noted that the definition of "security" includes any "investment contract" as defined in section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10),[4] *Daniel,* 561

"When used in this title, unless the context otherwise requires—

(10) The term 'security' means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract,* voting-trust certificate, certificate of

F.2d at 1230–1231, and found an involuntary, noncontributory pension fund ·interest to be an investment contract under the definition asserted in *SEC v. W. J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946)[5] because "money is invested in a common enterprise, the management of which is committed to a third party, and from which profits and income are reasonably expected." 561 F.2d at 1231. Such reasoning is applicable to the case at hand. Defendant's own pension plan summary states:

> As a member of the Plan you will make no contributions whatsoever for your pension or life insurance benefits. The contributions that United Merchants will make in your behalf to provide your pension benefits will be turned over to the Chase Manhattan Bank, which acts as Trustee under the Pension Plan. The Trustee will hold and invest these funds over the years, and when your pension benefits become payable, the Pension Plan Committee will authorize the Trustee to make payments from the funds then available in the Trust Fund.

United Merchants Pension Plan and Group Life Insurance Plan for Employees at 10. I find plaintiff to be a participant in an investment contract as defined in *Howey* and

applied in *Daniel* and as such entitled to protection under the anti-fraud provisions of the 1934 Act.

▮ Defendant contends in its brief in support of its motion to dismiss that no "sale"[6] occurred and no investment decision was made by plaintiff but rather that only a decision to work was made. The *Daniel* court's reasoning is again dispositive of this claim. When an employee gives his services to an employer who in turn contributes to a pension plan, value has been given for the interest in such plan via the employee's performance of services. Thus the employee is making his investment decision through the employer's non-gratuitous· contributions to the plan.[7] As the Seventh Circuit noted

> "From the employee's viewpoint, the contributions to the pension fund are part of his compensation and the value flows from him to that extent. From the employer's viewpoint, the contribution flows from the employer, constituting a part of the employee's compensation package. In either event, value has been given for a security, so that erection of a direct-indirect dichotomy is unwarranted."

*Daniel,* 561 F.2d at 1242 (footnote omitted), *citing SEC v. Harwyn Industries Corp.,* 326 F.Supp. 943, 954–55 (S.D.N.Y.1971).

---

deposit, for a security, or in general, any instrument commonly known as a 'security' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." (Emphasis supplied.)

**5.** The Supreme Court in *Howey* defined an investment contract as

"a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise."

328 U.S. at 298–99, 66 S.Ct. at 1103, *quoted* in *Daniel,* 561 F.2d at 1231.

**6.** The 1934 Act defines a "sale" as including "every contract of sale or disposition of a security or interest in a security, for value." 15 U.S.C. § 77b(3).

**7.** *Contra, Robinson,* note 3 *supra,* wherein the court rejected the thesis that an investment decision is made by an employee. The court stated:

The miners cannot be said to have "invest[ed] . . . money" within the meaning of *Howey,* for all contributions are made by the operators on a per-tonnage basis, and miners have no power to increase or decrease payments or to convert them to personal use.

435 F.Supp. 245, at 247 (footnote omitted). The *Robinson* court's reasoning is analyzed and the *Daniel* court's contrary determination that an investment decision is made by an employee is criticized in 178 N.Y.L.J. 87, Nov. 3, 1977 at 1, col. 1.

Defendant's further contention that Congress never intended the securities acts to apply to interests in pension plans must also be rejected. As the *Daniel* court noted, legislative history of the 1933 and 1934 Acts is silent on the question of pension plans,[8] probably due to the rarity of their existence in the 1930's. However, such rarity at the inception of the securities acts is no reason to deny application of the anti-fraud provisions to pension plans today. As the Seventh Circuit stated

> [E]mployee pension plans are now the major, if not sole, form of investment for most American workers to provide for their old age and because of the now crucial role that such plans play in today's capital markets, they are just the sort of investment vehicle that the securities acts were passed to regulate. . .
> The type of fraud allegedly perpetrated on the plaintiff is among those the securities laws were passed to prevent and remedy.

*Daniel*, 561 F.2d at 1241–42.

Finally, I reject defendant's argument that enactment of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, evidences Congress' intent to preclude application of the anti-fraud provisions of the securities acts to pension plans. ERISA's own savings clause states in section 514(d) that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). I agree with the *Daniel* court that ERISA and the securities acts should be construed as complementary to each other and that ERISA does not pre-empt the anti-fraud provisions of the securities acts in the field of pensions.[9]

Although section 10(b) and Rule 10b–5 are applicable in this case, Count III is dismissed for failure to state a claim upon which relief may be granted.

In Count III of his complaint, plaintiff alleges misrepresentations and omissions by incorporating paragraph 22 of the complaint. Paragraph 22 states that "[b]eginning in 1960 and continuing through August 31, 1975, defendant willfully or negligently misrepresented certain material facts and omitted to state other material facts concerning the value of plaintiff's interest in defendant's pension plan . . . ." and ten paragraphs of conclusory statements follow this introductory paragraph. Although plaintiff has alleged willful misrepresentations and omissions, he also has alleged negligent misrepresentations and omissions. It is unclear as to which, if any, of the subsequent ten paragraphs the word "willful" pertains. In order to satisfy the scienter requirement for his section 10(b) and Rule 10b–5 cause of action under *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), plaintiff must re-plead his Count II allegations in order to state a claim under Count III by clarifying which alleged misrepresentations and omissions were done willfully. *See Rich v. Touche Ross & Co.*, 415 F.Supp. 95, 101 (S.D.N.Y.1976).

Furthermore, even aside from the improperly pleaded scienter element, plaintiff has failed to satisfy the requirement of particularity for a fraud cause of action under Fed.R.Civ.P. 9(b). (See my discussion above under "Count II.") As I stated recently in *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, at 522 (S.D.N.Y. Aug. 18, 1977), "the complaint in an action for securities fraud must identify, *inter alia*, the misrepresentations which were allegedly made, and the manner in which they are considered to be false, and it must set forth facts from which an inference of fraud by a given defendant may be drawn." "[M]ere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of Rule 10b–5 are insufficient." *Shemtob v. Shearson, Ham-*

---

**8.** *See* the full analysis of the *Daniel* court, 561 F.2d at 1237–1241.

**9.** The Seventh Circuit's analysis of the pre-emption argument is contained in *Daniel*, 561 F.2d at 1246–1249.

*mill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971), *quoted in Weinberger v. Kendrick*, 432 F.Supp. 316, 320 (S.D.N.Y.1977). It is apparent that Count II as it is presently incorporated within Count III miserably fails to state a cause of action for damages under the 1934 Act.

▮ Insofar as Count III incorporates Count II's allegations of *negligent* misrepresentations and omissions, it fails to state a claim under section 10(b) and Rule 10b–5 since the necessary element of scienter, that is, "intent to deceive, manipulate, or defraud," *Hochfelder*, 425 U.S. at 193, 96 S.Ct. at 1381, is lacking. Thus the allegations of negligent misrepresentations and omissions fail to state a claim and are dismissed.

▮ The final defect contained in Count III is embodied in paragraph 28 which alleges upon information and belief that

> the omissions and misrepresentations referred to in paragraph 22 of this complaint (except subparagraph A.5 thereof) were made to numerous participants in the pension plan for the purpose of inducing them to become or remain employed by defendant, and were relied upon by them in accepting and continuing such employment.

This allegation violates the requirements of Rule 9(b) since a fraud allegation cannot ordinarily be pleaded "upon information and belief." *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972). *See* 2A Moore's Federal Practice ¶ 9.03 (2d ed. 1975). As the Second Circuit has stated, "[w]hile the rule is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded." *Segal v. Gordon*, 467 F.2d at 608. *See Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Weinberger v. Kendrick*, 432 F.Supp. at 320. Paragraph 22 does not "relate to matters peculiarly within the adverse parties' knowledge." Certainly the class members know whether or not omissions and misrepresentations were made to

them as members of the pension plan. The pleading of this allegation based "upon information and belief" is improper in this instance. Moreover, even if I were to consider this a matter peculiarly within defendant's knowledge, paragraph 22 still would be insufficient since it lacks a statement of facts upon which the belief is founded. Accordingly, that portion of Count III pleaded upon information and belief is dismissed for failure to state a claim.

## COUNT IV

Count IV alleges a class action against defendant for a breach of fiduciary duty under section 404 of ERISA, 29 U.S.C. § 1104. This breach is based upon defendant's alleged failure to discharge its duties with respect to the plan solely in the interests of the participants by (1) the imposition of arbitrary and unreasonable age and service requirements; and (2) misrepresentations and omissions of material fact after January 1, 1975, the effective date of Title I, Part 4 of ERISA, 29 U.S.C. §§ 1101–1114 (fiduciary responsibility provisions).

I will first address plaintiffs' contention that the pension plan's age and service requirements are arbitrary and unreasonable under ERISA.

ERISA was enacted on September 2, 1974 and imposed fiduciary duties on pension plan administrators effective January 1, 1975. 29 U.S.C. §§ 1101–4. Elaborate provisions prescribing minimum participation and vesting standards are set forth in sections 1052 and 1053 of title 29 and these minimum standards are applicable to pension plan years beginning after September 2, 1974; however, as to pension plans already existing on January 1, 1974 (defendant's pension plan concededly is such), the participation and vesting standards are not applicable until plan years beginning after December 31, 1975. 29 U.S.C. § 1061(b)(2). Employers failing to conform their pension plans to ERISA's regulatory scheme after the applicable dates are liable in a civil action to the plan's participants. 29 U.S.C. § 1132.

**1064**

Defendant's first plan year after December 31, 1975 commenced on July 1, 1976 and from that time ERISA's participation and vesting standards applied to it. Plaintiff attempts to attack the instant plan's age and service requirements is unreasonable and arbitrary under ERISA as of dates prior to and including August 31, 1975, his date of discharge. At none of these times were ERISA's standards as to participation and vesting applicable to defendant's plan and therefore plaintiff cannot attack the plan by attempting to allege a cause of action under such standards. To allow plaintiff to do so would negate the very language of the statute which delays application of the standards in question. *See Keller v. Graphic Systems of Akron, Inc.*, 422 F.Supp. 1005, 1009 (N.D.Ohio 1976) (where cause of action arose on August 31, 1975, after enactment of ERISA, but before ERISA's effective date for vesting and forfeiture provisions, ERISA was not dispositive of plaintiff's claim and pre-ERISA federal and state law controlled.)

By incorporation of paragraph 22 Count IV also alleges a breach of fiduciary duty by misrepresentations and omissions occurring after January 1, 1975, the effective date of ERISA's imposition of fiduciary duties. For the reasons stated under "Count II" of this opinion, plaintiff has failed to state a claim upon which relief may be granted as to those *willfully* done, but plaintiff has stated a claim for breach of fiduciary duty as to affirmative negligent misrepresentations and subsequent omissions. Plaintiff has not, however, stated a claim for relief under ERISA insofar as any allegations may relate to insufficient disclosure under ERISA's own specific disclosure standards since such disclosure provisions were given a deferred compliance date and therefore were not applicable to defendant's pension plan on the date of plaintiff's discharge. *See* 29 C.F.R. §§ 2520.104–3, 2520.104–6.

### COUNT V

Plaintiff argues that as of July 1, 1976, the date on which ERISA's vesting provisions became applicable to defendant's pension plan, 29 U.S.C. § 1061(b)(2), he qualified for a vested pension under the terms of ERISA. I disagree.

Plaintiff was discharged on August 31, 1975, almost a full year before the vesting provisions became effective. I will not take a statute into which Congress deliberately and carefully incorporated delayed effective dates and apply it retroactively. *See Keller v. Graphic Systems of Akron, Inc.*, 422 F.Supp. at 1009. Count V is accordingly dismissed for failure to state a claim upon which relief may be granted since I find no violation of ERISA's vesting provisions under 29 U.S.C. § 1053 in this case.

For the above reasons defendant's motion to dismiss Counts I through V is granted in part and denied in part. Plaintiff is granted 20 days leave to replead those allegations of fraudulent misrepresentations and omissions within Counts II, III, and IV in accordance with this opinion. Leave to replead the remaining allegations within these Counts and the allegations within Counts I and V is denied since the failure to state a claim upon which relief may be granted in those instances is a matter of law and not attributable to any factual defects in plaintiff's pleading.

SO ORDERED.